**UNITED STATES DISTRICTCOURT**
**DISTRICT OF CONNECTICUT**

|                          |     |                        |
|--------------------------|-----|------------------------|
|                          | :   | **NO. 3:18-GP-35 (SRU)** |
| **IN RE**                | :   |                        |
|                          | :   |                        |
| **JOSEPHINE SMALLS MILLER** | :   | **APRIL 1, 2019**      |

**FEDERAL GRIEVANCE COMMITTEE'S**
**RESPONSE TO RESPONDENT'S MOTION TO DISMISS**

The undersigned, Grievance Counsel for the Federal Grievance Committee (the "FGC"), files this memorandum in response to Respondent's Motion to Dismiss dated February 21, 2019.   See ECF No. 9.

**Background**

This reciprocal discipline proceeding arises out of findings made in a prior Connecticut discipline matter pursued by the Connecticut Office of Chief Disciplinary Counsel ("OCDC").   See Office of Chief Disciplinary Counsel v. Josephine Smalls Miller, DBD-CV17-6022075-S (Conn. Super Ct.).   The OCDC's allegations of misconduct against the Respondent were alleged in a four-count, publicly filed presentment:

In Count One, the OCDC alleged that the Respondent violated Rules of Professional Conduct 1.15(a)(5) (safekeeping of property), 1.15(c) (safekeeping property) and 8.1(2) (bar admission and disciplinary matters).   These rule violations related to Respondent's receipt and deposit of $200,000 of non-client funds into her IOLTA and her failure to respond to a lawful demand by OCDC for her IOLTA records during the investigation of the underlying complaint.

Count Two alleged that Respondent violated of Rules 1.3 (diligence), 1.2 (expediting litigation), and 8.4 (4) (misconduct). These rule violations related to

Respondent's conduct in two different state cases.   In those cases, she repeatedly cancelled discovery and pretrial matters, missed scheduling deadlines, and canceled scheduled events with little or no notice to opposing counsel and the court, even after warnings by the court that her procrastination was unacceptable.   In one of the matters, the Banks case, the Respondent failed to appear for trial and the counterclaim was nonsuited and dismissed, and Respondent failed to appear and argue her motion to reargue the dismissal.

Count Three alleged that Respondent violated Rules 1.4 (a)(1)-(4) and 1.4(b) (communications) in the course of representing a client before the Connecticut Appellate Court while under an order of suspension by that court.

Count Four alleged that the Respondent violated Rule 5.5 when she engaged in the unauthorized practice of law by providing legal advice and drafting legal documents for a client in a Connecticut Appellate Court matter while under an order of suspension by that court.   See generally Amended Presentment dated March 6, 2018 (copy attached as **Exhibit A**).

In her answer to the state court presentment, the Respondent denied any misconduct and instead asserted two "affirmative defenses," claiming that the recommendations of the OCDC and the underlying decisions of the Statewide Grievance Committee ("SGC") were based on racially discriminatory and retaliatory reasons, in violation of the Respondent's constitutional rights.   See Resp.'s Am. Answer and Special Defenses dated March 13, 2018 (attached as **Exhibit B**).

2

The Respondent's state disciplinary matter was heard before Judge Shaban on June 25, 2018, June 26, 2018, and June 27, 2018.   The parties presented testimony and exhibits and submitted extensive post-trial briefs, the last of which was filed on August 27, 2018.

On July 30, 2018, the Respondent filed a "motion to conform pleadings to the proofs," which sought to clarify that her affirmative defenses were predicated on the "Fourteenth Amendment to the United States Constitution and Article First, Section 20 of the Connecticut Constitution."   See Mot. Conform Pleadings dated July 30, 2018 (attached as **Exhibit C**).   The OCDC did not object to the requested amendments and the court ultimately allowed them.

On November 26, 2018, Judge Shaban issued his Memorandum of Decision, which is the basis for the reciprocal discipline being sought in this proceeding.   See ECF 4, Ex. A (Memorandum of Decision) (hereinafter "Mem. of Dec."). In his ruling, Judge Shaban found that the OCDC had proven, by clear and convincing evidence, that the Respondent had engaged in misconduct.   The decision is forty pages in length and contains a detailed discussion of the evidence presented.   On the issue of the affirmative defenses, Judge Shaban found that although special defenses can be asserted in a state court disciplinary proceeding, the Respondent's special defenses were wholly conclusory, and she otherwise failed to carry her burden of proving any underlying facts suggesting that the state court disciplinary proceedings were being pursued for racially discriminatory or retaliatory reasons.   See Mem. of Dec. at 25-28.

After reviewing all of the evidence and arguments of the parties, including the

Respondent's affirmative defenses and arguments concerning her claimed "disparate treatment," the court made the following findings:

> As to count one, the respondent is guilty of misconduct in that she violated rules 1.15 (a)(5), 1.15 (c), and 8.1(2) of the Rules of Professional Conduct.   The respondent is suspended from the practice of law in Connecticut effective immediately for a period of thirty (30) days….

> As to count two, the respondent is guilty of misconduct in that she violated rules 1.3, 3.2, and 8.4(4) of the Rules of Professional Conduct. The Respondent is suspended from the practice of law in Connecticut immediately for a period of six (6) months. This suspension shall be concurrent to the suspension in count one….

> As to count three, the petitioner [OCDC] failed to carry his burden of proof as to a violation of rules, 1.4(a)(1), (2), (3) and (4) of the Rules of Professional Conduct and those charges are dismissed.   However, the respondent is guilty of misconduct in that she violated rules 1.4(a)(5) and 1.4(b) of the Rules of Professional Conduct.   The respondent is suspended form the practice of law in Connecticut effective immediately for a period of one (1) year.   The suspension shall be concurrent to the suspensions of count one and two….

> As to count four, the respondent is guilty of misconduct that she violated rule 5.5of the Rules of Professional Conduct. The respondent is suspended from the practice of law in Connecticut effective immediately for a period of one (1) year.   This suspension shall be concurrent to the suspensions in counts one, two, and three….

<u>See</u> Mem of Dec. at 38-39.

On February 7, 2019, the FGC filed a Presentment against the Respondent pursuant to Local Rule 83.2(f)(2) seeking reciprocal discipline.   <u>See</u> ECF No. 4.   By Order dated February 11, 2019, this Court responded by issuing an Order to Show Cause directing the Respondent to file an Answer and setting this smatter down for a hearing on April 11, 2019.   <u>See</u> ECF No. 5.

The Respondent filed a Motion to Dismiss that was docketed on February 25,

2019.   <u>See</u> ECF No. 9.   In her Motion to Dismiss—which she has indicated to the undersigned is effectively her answer to the Order to Show Cause—the Respondent argues that the state court proceeding below should not result in reciprocal discipline. Following a request for a brief extension of time, the Court granted the FGC until April 1, 2019 to file its response.   <u>See</u> ECF Nos. 11.

<u>**Argument**</u>

**I.    THE SCOPE OF THIS PROCEEDING IS CONFINED TO THE STATE DISCIPLINARY PROCEEDING RECORD AND THE RESPONDENT BEARS THE BURDEN OF DEMINSTRATING, BY CLEAR AND CONVINCING EVIDENCE, THAT THE RECIPROCAL DISCIPLINE SHOULD NOT BE IMPOSED**

The FGC ad the Respondent are in agreement as to the grievance rule that applies here.   "Local Rule 83.2(f)(2) provides that on a presentment of the Grievance Committee petitioning the Court to impose reciprocal discipline, the identical discipline must be imposed unless it clearly appears on the face of the record in the prior disciplinary proceeding:

> a. that the procedure was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; or
>
> b. that there was such an infirmity of proof establishing the misconduct as to give rise to the clear conviction that the Court could not, consistent with its duty, accept as final the discipline imposed; or
>
> c. that the imposition of the same discipline by the Court would result in grave injustice; or
>
> d. that the misconduct established is deemed by the Court to warrant substantially different discipline."

<u>In re Williams</u>, 978 F. Supp. 2d 123, 124–25 (D. Conn. 2012), <u>aff'd sub nom.</u> <u>Fed.</u>

<u>Grievance Comm. v. Williams</u>, 743 F.3d 28 (2d Cir. 2014), <u>as amended</u> (Apr. 10, 2014)

5

(quoting D. Conn. L. Civ. R. 83.2(f)(2)).[1]   If the Court finds that one or more of these exceptions exists, it may enter "such other order as it deems appropriate." Id.

Even through the Respondent cites to the correct rule, her motion to dismiss does not discuss the applicable standard of review and the burden of proof that applies in reciprocal discipline matters.   This is not surprising, as both the scope of review and the burden of proof set a high bar for avoiding reciprocal discipline.   The standard of review is limited and highly deferential to the state court's determination.   See, e.g., In re Roman, 601 F.3d 189, 192–94 (2d Cir.2010); In re Edelstein, 214 F.3d 127, 132 (2d Cir.2000); see also In re Williams, 398 F.3d 116, 118 (1st Cir. 2005) ("this court is without jurisdiction, in a federal disciplinary proceeding, to disturb the state court's imposition of discipline…and the state court's substantive findings ordinarily are entitled to a high degree of respect when this court is asked to impose reciprocal discipline.") (citing Theard v. United States, 354 U.S. 278, 282 (1957)).   With regard to who bears the burden in such a proceeding, the law is clear that an attorney who seeks to avoid the imposition of reciprocal discipline bears the burden of demonstrating by "clear and convincing evidence" that reciprocal discipline should not be imposed.   See In re Roman, 601 F.3d at 194 (citing In re Friedman, 51 F.3d 20, 22 (2d Cir.1995) (applying burden of proof on appeal from imposition of reciprocal discipline)).   As Judge Chatigny observed in Williams, "[r]arely is this burden met or even attempted to be met.   In most

---

[1] "Local Rule 83.2(f) is identical to ABA Model Federal Rule of Disciplinary Enforcement, R.II(D)(1991). The rule reflects the standard set forth in Selling v. Radford, [243 U.S. 46 (1917)], which bars reciprocal discipline when the court finds an absence of due process in the prior disciplinary proceeding, substantial infirmity in the proof of a violation, or some other grave reason sufficient to indicate that reciprocal discipline is inconsistent with principles of justice." Williams, 978 F. Supp. 2d at 25, n1. (citing In re Tidwell, 295 F.3d 331, 333–34 (2d Cir.2002)).

instances, the respondent simply accepts reciprocal discipline." In re Williams, 978 F. Supp. 2d at 125. Nevertheless, "when the presentment is contested, as it has been here, the Court is not to act as a rubber stamp in the name of reciprocity. Instead, it must determine whether the record of the prior proceeding discloses a substantial defect covered by one of the exceptions to reciprocal discipline." Id; see also Selling, 243 U.S. at 51 (court's review involves only an "intrinsic consideration of the state record" from the state disciplinary proceeding); In re Jacobs, 44 F.3d 84, 88 (2d Cir.1994)("The district court is required to 'examine the state proceeding for consistency with the requirements of due process, adequacy of proof and absence of any indication that imposing discipline would result in grave injustice.'") (quoting Selling, 243 U.S. at 51).

The text of our Local Rule is silent as to who ultimately bears the burden of supplying the Court with the "record in the prior disciplinary proceeding," but the FGC believes that it is appropriate to require the Respondent to carry this burden, given that it is the Respondent that bears the burden of demonstrating, clearly and convincingly, that the prior proceeding was deficient and that reciprocal discipline should not be imposed. This allocation of the responsibility for furnishing the record is consistent with the holdings of other federal courts, see, e.g., In re Williams, 398 F.3d 116 at 119 ("It is the burden of the respondent attorney to ensure that this whole of the record is furnished to the court in a timely manner and to identify the parts of the record upon which he relies"), and it is also consistent with the Second Circuit's assignment of the burdens of proof and persuasion in reciprocal discipline proceedings. See Roman, 601

7

F.3d 192–93; In re Friedman, 51 F.3d 20, 22 (2d Cir. 1995) ("as Selling makes clear, it was [the Respondent's] burden to demonstrate by clear and convincing evidence that, in this case, the New York procedures were wanting.").

In light of the foregoing, it is the Respondent—not the FGC—that must ensure that the Court has the material, exhibits, or evidence necessary to conduct its review of the prior proceeding.   Any deficiencies in the record would be a basis to deny Respondent's request for different discipline; but they cannot be held against the FGC, or cited by Respondent as a basis to avoid discipline.[2]

For the reasons discussed below, the Respondent has failed to meet her heavy burden of showing that the Connecticut disciplinary proceedings lacked due process, that there was an "infirmity of proof" supporting the misconduct allegations, or that "grave injustice" would occur if reciprocal discipline were imposed.   Nor can she show that "substantially different" discipline should be imposed, much less a finding of "no discipline," as she has requested in her papers.

## II.    RECIPROCAL DISCIPINE IS WARRANTED

The Respondent's motion to dismiss asserts that reciprocal discipline is unwarranted in her case because (1) the underlying state proceeding deprived her of due process, (2) there was an "infirmity of proof" supporting the state court disciplinary findings, (3) the imposition of the same discipline here would result in "grave injustice,"

---

[2] In this regard, counsel for the FGC notes that the Respondent has not provided the Court with the complete transcript of the Connecticut disciplinary proceedings.   The Respondent omitted, perhaps inadvertently, the transcript for the morning session on June 25, 2019.   If this is not supplied by the Respondent, counsel for the FGC will obtain a copy of this transcript and will provide it to the Court and the Respondent upon receipt.   In addition, the Respondent has not provided the Court with any of the exhibits entered into evidence in the Connecticut proceeding.

and (4) because there was no serious misconduct, no discipline should be imposed upon Respondent, or, at most, she should receive a brief suspension retroactive to the state court order dated November 26, 2018.

As to the Respondent's first contention, she cannot seriously contend that the prior state disciplinary proceeding "was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process."   D. Conn. L. Rule 83.2(f)(2)(a).   The proceeding involved a full three-day hearing, with multiple witnesses and numerous exhibits, the opportunity for Respondent to submit a post-trial brief, and the court issued a forty-page memorandum of decision discussing the evidence and respective arguments of the parties.

The Respondent nevertheless argues (Mot. at 3-4) that she had no "meaningful opportunity to be heard" because the court failed to consider her affirmative defenses, but this argument is not supported by the state court record.   In fact, the contention is undercut by Respondent's own motion, wherein she concedes that Judge Shaban "permitted the submission of testimony and documentary evidence in support of the affirmative defenses…."   See Mot. at 3.   It is likewise untrue that Judge Shaban "refused to consider said defenses in its decision-making…"   Id.   Judge Shaban discussed the defenses in Section V of his decision.   He rejected them, but also observed that, to the extent she wished to pursue them further in another forum, she had the ability to do so.   See Memo. of Dec. at 25-28.   Judge Shaban's conclusions were almost certainly informed by the reply brief filed by the OCDC, which argued that Respondent's claims of discriminatory treatment were vague, speculative, and

9

unproven.   A copy of the OCDC's brief addressing the affirmative defenses is attached as **Exhibit D**.

To the extent that Respondent still believes that there was "substantial evidence of constitutional violations" justifying a dismissal of the state disciplinary proceedings (Mot. at 3), it is her obligation to cite or marshal that evidence for the Court.   Her submission fails to do so, with the possible exception of her brief references to the different discipline imposed upon two Caucasian attorneys, Attorney Kristen Peters-Hamlin and Attorney Howard Lawrence (Mot. at 13-14).   The Respondent fails to explain, however, how those two Caucasian attorneys were "similarly situated" to the Respondent, aside from the fact that they—like Respondent—were both found to have engaged in misconduct and faced reciprocal disciplinary proceedings.   As far as this record shows, neither of the attorneys engaged in misconduct similar to that engaged in by Respondent; nor did they engage in the practice of law in an appellate court matter, while under suspension, as the Respondent did.

As to her second argument—that there was an "infirmity of proof" showing violations of the Rules of Professional Conduct—the summary of the factual findings detailed in Judge Shaban's decision show that there was ample basis to believe that Respondent had violated the Rules.   The Respondent does not genuinely refute the accuracy of these factual findings, but instead argues that there was evidence that the courts and/or state disciplinary authorities pursued the allegations because of her race. To support this extremely serious claim, she cites to the Connecticut Appellate Court's decision to clarify its prior suspension order in response to a letter from the OCDC; she

references the actions of a superior court judge that dismissed one of her state cases; and she claims that the SGC and OCDC pursued allegations of misconduct raised by her opposing counsel, but failed to investigate misconduct allegations made by Respondent.   See Mot 7-9. These allegations were addressed at length in OCDC's reply brief (attached hereto as Exhibit D) and Judge Shaban discussed them in his ruling, explaining how these unproven allegations "did nothing to address or rebut the allegations contained in the four counts of the presentment." See Mem. of Dec. at 28, n.3.   Her burden in this reciprocal proceeding is to show, clearly and convincingly, that the misconduct allegations against her were demonstrably untrue—*i.e.*, that they suffered from an "infirmity of proof"—and, additionally, that the state court record shows that the state disciplinary proceedings were racially motivated.   Her response to the Order to Show Cause is wholly conclusory, does not include a detailed discussion of the evidence, and fails to meet her burden.

Finally, as to Respondent's third and fourth arguments, the imposition of identical discipline would not result in "grave injustice" and, even if the Court were inclined to revisit the discipline imposed, "substantially different" discipline is not warranted.   The conduct found to have been proven by Judge Shaban was serious.   Two clients had their cases dismissed as a result of Respondent's failure to comply with court orders and the Rules of Professional Conduct, and the Respondent provided legal services to a client in an Appellate Court matter even after she had been suspended by that court. Judge Shaban found that the Respondent's actions in seeking to circumvent the Appellate Court suspension "were done intentionally and in direct contravention of a

valid court order."   Mem. of Dec. at 32.   Judge Shaban's one-year suspension also

was imposed against a backdrop that included a prior state court reprimand in 2015,

which was based on a federal Rule 11 sanctions ruling issued against Respondent by

Judge Meyer.   See Miller v. Bridgeport Board of Education, United States District

Court, Docket No. 3:12-CV-01287 (JAM) (D. Conn. July 30, 2014).   Accordingly, in light

of this record, and the Respondent's prior disciplinary history, the discipline imposed by

Judge Shaban was appropriate.   It should be imposed here as well.

### Conclusion

For the foregoing reasons, the Court should impose reciprocal discipline upon

the Respondent, effective immediately.   The Respondent may petition for readmission,

pursuant to D. Conn. L. Rule 83.2.

THE GRIEVANCE COMMITTEE OF THE
UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF CONNECTICUT


By:/s/ Robert M. Frost, Jr.
   Robert M. Frost, Jr. (ct 19771)

   FROST BUSSERT, LLC
   129 Church Street, Suite 226
   New Haven, CT 06510
   Tel:     (203) 495-9790
   Fax:     (203) 495-9795
   Email:   rmf@frostbussert.com

   ITS COUNSEL

12

## **CERTIFICATION**

I hereby certify that on this date a copy of the foregoing pleading was filed electronically and served by mail on anyone unable to accept electronic filing.   Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system and by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.   Parties may access this filing through the Court's CM/ECF system.

Dated at New Haven, Connecticut on this 1st day of April, 2019.


*/s/ Robert M. Frost, Jr.*
Robert M. Frost, Jr.