UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE<br>JOSEPHINE SMALLS MILLER | No. 3:18-gp-00035 (SRU) |

### **ORDER**

The Grievance Committee of the United States District Court for the District of Connecticut ("Grievance Committee") has brought this presentment action to obtain reciprocal discipline against Attorney Josephine Smalls Miller ("Miller") for violations of the Rules of Professional Conduct ("RPC"). I held a hearing on April 11, 2019 and took the matter under advisement. For the reasons stated below, I **grant** reciprocal discipline against Miller and **deny** Miller's Motion to Dismiss.

### I. Background

On March 6, 2018, the Connecticut Office Chief Disciplinary Counsel ("OCDC") filed an amended presentment action against Miller in the Superior Court of Connecticut, Judicial District of Danbury. *See Office of Chief Disciplinary Counsel v. Josephine Smalls Miller*, DBD-CV17-6022075-S (Conn. Super Ct.), Memorandum of Decision ("Mem. of Decision") at 1. The Connecticut Superior Court found that Miller violated rules 1.15(a)(5), 1.15(c), 1.3, 1.4 (a)(5), 1.4 (b), 3.2, 5.5, 8.1 (2), and 8.4 (4) of the RPC. *See id*. at 38–40.

The facts giving rise to this action are set forth at length in the trial court's Memorandum of Decision. In brief summary, the ODCD's amended presentment alleged four counts of misconduct against Miller. Court One alleged that Miller violated RPC 1.15(a)(5) (safekeeping of property), 1.15(c) (safekeeping property) and 8.1(2) (bar admission and disciplinary matters),

in connection to Miller's deposit of $200,000 of non-client funds into her IOLTA account and her failure to respond to OCDC's request for IOLTA records during an investigation by the Statewide Grievance Committee.[1] *Id.* at 4–5. The trial court found by clear and convincing evidence that Miller exercised possession and control over the funds "evidenced by [Miller] issuing two separate $10,000 checks out of [her IOLTA account] as donations to her church." *Id.* at 8. Although the court found that Miller had no intent "to deceive anyone or deprive anyone of funds," the court concluded that the funds had no connection to Miller's representation of a client in violation of the RPC. *Id.* at 8–9.

Count Two alleged that Miller violated RPC 1.3 (diligence), 3.2 (expediting litigation), and 8.4 (4) (misconduct) after Miller repeatedly missed deadlines, canceled scheduled events with little or no notice to opposing counsel or the court, and failed to appear for motion hearings in several state matters. *See id.* at 10. The court found that Miller's "multiple failures to appear for scheduled court matters . . . reveal a pattern of both negligence and intentional avoidance of such matters, often to the detriment of her clients." *Id*. at 15.

Count Three alleged that Miller violated RPC 1.4 (a)(1)–(5) and 1.4 (b) (client communications) while representing a client before the Connecticut Appellate Court under an order of suspension. *Id*. at 17. The court found that Miller executed a retainer agreement with a client in a parental rights dispute, while under a six-month suspension issued by the Connecticut Appellate Court for filing frivolous appeals and failing to meet deadlines. *See id*. at 18–19. Although Miller was aware of her suspension, the retainer agreement failed to advise Miller's client about her limitations to practice before the Appellate Court. Miller alleged that she orally advised the client of her suspension, but the trial court found that any "oral advisement was

---

[1] The trial court found that Miller received an unsolicited gift of $200,000 from a friend whom Miller met at church. Miller returned $180,000 to her friend after donating $20,000 to her church. *See* Mem. of Decision at 5–7.

2

completely inconsistent with the express terms of the retainer letter which made no reference whatsoever as to any limitations placed upon her by the Appellate Court. Such conflicting information made it impossible for [Miller's client] to make an informed decision regarding [Miller's] representation."[2] *Id*. at 22.

Count Four alleged that Miller violated RPC 5.5 (unauthorized practice of law) when she provided legal services while under suspension by the Connecticut Appellate Court. *Id.* at 23–24. Miller acknowledged that she had not been reinstated by the Appellate Court when she drafted legal documents for a client. *Id.* at 24. Accordingly, the trial court found by clear and convincing evidence that Miller violated RPC 5.5 by engaging in the unauthorized practice of law. *Id.* After reviewing the evidence in the record, the trial court suspended Miller from the practice of law in Connecticut for one year. *Id*. at 38–39.

Consequently, on November 28, 2018, this Court received a Notice of Reciprocal Discipline. Doc. No. 1. The Grievance Committee filed a Presentment for Discipline on February 7, 2019, requesting that I also impose a one-year suspension. Doc. No. 4. On February 11, 2019, I issued an Order to Show Cause (doc. no. 5) to which Miller responded by filing a Motion to Dismiss the Presentment (doc. no. 9).

In her Motion, Miller does not refute the underlying allegations of misconduct. Instead, she raises four constitutional challenges to the imposition of reciprocal discipline: (1) reciprocal discipline is unwarranted because Miller was deprived of adequate due process at the state presentment hearing, (2) reciprocal discipline is unwarranted because Miller has a viable claim of discrimination and retaliation, (3) imposing reciprocal discipline would preclude Miller from

---

[2] The trial court noted in its Memorandum of Decision that the OCDC failed to meet its burden of proof regarding violations of RPC 1.4 (a)(1), (2), (3), and (4). *Id*. at 38. The court found however, that Miller violated RPC 1.4(a)(5) and 1.4(b). *Id.*

presenting evidence of racial disparities in the treatment of attorneys by the Statewide Grievance Committee, and (4) reciprocal discipline would lead to disparate treatment as other similarly situated white attorneys have received more lenient treatment.

In opposition (doc. no. 13), the Grievance Committee argues that Miller fails to demonstrate by clear and convincing evidence that reciprocal discipline should not be imposed. In addition, the Grievance Committee contends that Miller's constitutional arguments are beyond the scope of this proceeding.

## II. Standard of Review

Local Rule 83.2(f)(2) governs when reciprocal discipline should be imposed in the District of Connecticut. *See In re Williams*, 978 F. Supp. 2d 123, 123–24 (D. Conn. 2012). Under Local Rule 83.2(f)(2), when the Grievance Committee petitions for the imposition of reciprocal discipline via a presentment action, the identical discipline must be imposed unless it clearly appears on the face of the record in the prior disciplinary proceeding:

a. That the procedure was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; or
b. That there was such an infirmity of proof establishing the misconduct as to give rise to the clear conviction that the Court could not, consistent with its duty, accept as final the discipline imposed; or
c. That the imposition of the same discipline by the Court would result in grave injustice;
d. Or that the misconduct established is deemed by the Court to warrant substantially different discipline

D. Conn. L. Civ. R. 83.2(f)(2). If the court finds that one or more of these exceptions exists, it may enter "such other order as it deems appropriate." *Id.* "The standard of review in this proceeding is highly deferential to the state court's determination." *In re Williams*, 978 F. Supp. 2d at 125 (citing *Theard v. United States*, 354 U.S. 278, 282 (1957)); *see also In re Roman*, 601 F. 3d 189, 192–94 (2d Cir. 2010); *In re Edelstein*, 214 F.3d 127, 132 (2d Cir. 2000). The burden

falls on Miller to demonstrate by clear and convincing evidence that reciprocal discipline should not be imposed. *In re Roman*, 601 F.3d at 193 (citing *In re Friedman*, 51 F.3d 20, 22 (2d Cir. 1995)). When the presentment is contested, as it has been here, the court should not act as a rubber stamp in the name of reciprocity. *In re Williams*, 978 F. Supp. 2d at 125. Instead it must determine whether the record of the prior proceeding discloses a substantial defect covered by one of the exceptions to reciprocal discipline. *Id.*

### III.    Discussion

#### A. Reciprocal Discipline

At the outset, Miller provides no evidence in her Motion to Dismiss to rebut the factual findings by the Connecticut Superior Court. Miller does not dispute that she wrongfully deposited funds into her IOLTA account or that she repeatedly missed case deadlines, failed to properly communicate that she was under an order of suspension to a client, and engaged in the unauthorized practice of law. After considering the evidence in the record, I find that none of the exceptions listed in Local Rule 83.2(f)(2) applies and thus reciprocal discipline is warranted.

Rule 82.2(f)(2)(a) permits me to impose another form of discipline if the state court's procedure was so lacking in notice or an opportunity to be heard that Miller was deprived of due process. Miller, who is African American, argues that the state trial court did not provide her adequate due process when the court dismissed her allegations of racial discrimination and retaliation. *See* Mot. to Dismiss at 3–4. In her Motion however, Miller presents no facts to show that the state grievance proceeding lacked due process. To the contrary, Judge Shaban's Memorandum of Decision thoroughly analyzed Miller's affirmative defenses and correctly concluded that Miller "simply recite[s] legal conclusions of racial discrimination or retaliation unsupported by any factual allegations." Mem. of Decision at 25. During the state presentment

5

hearing, the court considered Miller's answer and special defenses (state doc. no. 109) and her motion to dismiss (state doc. no. 117). Miller also testified during her state grievance hearing regarding her racial discrimination claims. *See* Doc. No. 14-2 at 10–11. Miller's argument that she was not provided adequate due process in the state court proceeding is contrary to the evidence in the record.

The exception under Local Rule 82.2(f)(2)(c) also does not apply. Because Miller does not directly refute the trial court's findings, she fails to show that there is an "infirmity of proof" regarding her violations of the RPC. Miller provides no specific facts concerning her own misconduct to refute the one-year suspension imposed by the state.

The exception under Local Rule 83.2(f)(2)(c) allows for the imposition of a different sentence if imposition of the same sentence by the court would result in a grave injustice. Miller was suspended by the Connecticut Superior Court for one year. Mem. of Decision at 39. There is a rebuttable presumption that reciprocal discipline imposed by this Court will be identical. *See In re Roman*, 601 F.3d at 192–93. Miller argues that the imposition of reciprocal discipline would result in a grave injustice because she has not been provided an adequate forum to "vindicate her constitutional claims of discrimination and retaliation." Mot. to Dismiss at 11. As noted above, Miller raised her constitutional claims during the state proceeding in her amended answer and special defenses (state doc. no. 109 at 3–4). The state court however, dismissed her discrimination claims, stating that they were outside of the scope of the presentment proceedings. "[T]he allegations of [Miller's] affirmative defenses do not actually constitute a special defense, instead, they constitute an independent cause of action through which [Miller] can seek specific damages or other relief." Mem. of Decision at 26.

I agree with Judge Shaban's reasoning. An affirmative defense is a defendant's "assertion of facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all allegations in the complaint are true." *Black's Law Dictionary* 509 (10th ed. 2014). Even if Miller's discrimination and retaliation claims are true, as a matter of law they would not defeat the Grievance Committee's complaint. Miller cites no authority stating that the affirmative defense of selective enforcement is available in an attorney disciplinary proceeding. Moreover, Miller's conclusory allegations of disparate treatment do not address her underlying misconduct.

Lastly, the exception listed in Local Rule 83.2(f)(2)(d) does not apply. In the Second Circuit, courts consider the fourth exception "subsumed" by the grave injustice exception. *In re Roman*, 601 F.3d at 193. For the reasons stated above, I find that Miller's misconduct does not warrant substantially different discipline then the discipline imposed by the Connecticut Superior Court.

Accordingly, an order imposing reciprocal discipline is warranted in this case.

B. Imposition of Reciprocal Discipline

Because Miller has failed to sustain her burden of demonstrating that reciprocal discipline should not be imposed, the Court imposes reciprocal discipline as required by Local Rule 83.2(f)(2). Miller is suspended from practice in this Court for a period of one year. The one-year period is deemed to have commenced on November 26, 2018, when Miller was suspended by the Connecticut Superior Court. Therefore, her suspension in this Court shall be concurrent to her state suspension. Miller may be reinstated to practice in this Court when she satisfies the requirements for readmission to practice in Connecticut.

## IV. Conclusion

For the foregoing reasons, reciprocal discipline against Miller is imposed for a length of one year and Miller's Motion to Dismiss is **denied**.

So ordered.

Dated at Bridgeport, Connecticut, this 10th day of May 2019.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge
